John Robert McCOOL, Appellant

v.

DEPARTMENT OF CORRECTIONS of the Commonwealth of Pennsylvania, and its agents, Jeffrey Beard; Catherine McVey and Donald Skunda.

Commonwealth Court of Pennsylvania.

Submitted Feb. 6, 2009.
Amended Oct. 28, 2009.
Decided July 29, 2009.

John Robert McCool, appellant, pro se.

Kemal Alexander Mericli, Sr. Deputy Attorney General, Pittsburgh and John G. Knorr, III, Chief Deputy Attorney General, Harrisburg, for respondents.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

John Robert McCool, an inmate at the State Correctional Institution at Forest (SCI–Forest), appeals an order of the Court of Common Pleas of the 37th Judicial District (Forest County Branch) (trial court) that dismissed his medical malpractice complaint on grounds of sovereign immunity and failure to state a cause of action. We affirm, albeit on grounds additional to those relied upon by the trial court.

In his complaint, McCool alleged that he received negligent medical care while at SCI–Forest, where he has been incarcerated since August of 2005. McCool alleges that his conditions, mastocytosis[1] and esophageal dysphagia,[2] which have caused "massive scarring" and difficulty swallowing, were not appropriately addressed at SCI–Forest. Complaint ¶ 10. On February 2, 2007, McCool suffered an esophageal blockage that prevented him from swallowing foods or liquids. He reported the blockage to medical staff, who responded that he would have to sign up for "sick-call" the next day. Complaint ¶ 12. The next afternoon, McCool was rushed to a hospital where he underwent emergency surgery, described by McCool as a "near death experience." Complaint ¶ 15. At the hospital, McCool was diagnosed as suffering from "esophageal stricture" and was given a treatment program. Complaint ¶ 14.

On March 19, 2008, McCool filed the instant complaint against the Pennsylvania Department of Corrections (Department); Jeffrey Beard, Department Secretary; Catherine McVey, Department Director of the Bureau of Health Care;[3] and Donald Skunda, Director of Prison Health Care Services at SCI–Forest. McCool was granted permission to proceed *in forma pauperis*. On May 19, 2008, McCool petitioned for leave to file an amended complaint. The same day, he filed a motion to join additional defendants: Prison Health Care Services at SCI–Forest; B. Dombrowsky, Corrections Unit Manager at SCI–Forest; S. Dombrowsky, Corrections School Principal at SCI–Forest; and three employees of Prison Health Care Services, Nurse Joan Delie, Nurse Rhonda Sherbine and Doctor Maxa. On May 28, 2008, McCool filed certificates of merit, in accordance with PA. R.C.P. No. 1042.3(a)(3), attesting that expert testimony would not be necessary to prosecute his claims of professional malpractice.

1. Mastocytosis is a disorder caused by the presence of too many mast cells, which are used in the body's immune system. The excessive release of chemicals by mast cells can cause allergic responses such as flushing, itching, abdominal cramping, and even shock. In turn, this can cause musculoskeletal pain, abdominal discomfort, nausea and vomiting, ulcers, diarrhea, and skin lesions. National Institutes of Health, National Institute of Allergy and Infectious Diseases, *Mastocytosis*, http://www3.niaid.nih.gov/topics/mastocytosis.

2. Dysphagia is difficulty with swallowing. STEDMAN'S MEDICAL DICTIONARY 554 (27th ed. 2000).

3. The Department's Answer explained that McVey was the Department's Deputy Secretary for Administration rather than the Department's Director of the Bureau of Health Care. McCool petitioned to amend his complaint to remove McVey as a defendant, but the trial court's dismissal of McCool's complaint rendered his Motion to Amend moot.

On June 4, 2008, the trial court, *sua sponte,* dismissed McCool's complaint under authority of the Prison Litigation Reform Act (PLRA), 42 Pa.C.S. §§ 6601–6608; denied McCool's request to join additional defendants employed in the prison's health care services department; and denied McCool's application to file an amended complaint. Thereafter, in its PA. R.A.P. 1925(a) opinion, the trial court explained that it based its dismissal of McCool's claim on the two affirmative defenses raised by the defendants, sovereign immunity and lack of notice. In addition, the court found that McCool's complaint was appropriately dismissed because McCool had violated the PLRA's "three strikes rule." This appeal followed.

■ On appeal, McCool raises three issues for our consideration.[4] First, McCool contends that the trial court erred in refusing to allow him to join additional defendants and to amend his complaint. Second, McCool argues that the trial court erred in dismissing his complaint, particularly on the basis of the PLRA, inasmuch as his complaint did not challenge prison conditions. Finally, McCool argues that the trial court erred in refusing to allow him to pay the filing fees out of his own pocket so that he could continue with his lawsuit.

■ We begin with McCool's contention that he should have been allowed to join additional defendants. The trial court held that McCool was not permitted to join the prison health care services department and its agents, Delie, Sherbine, and Dr. Maxa as additional defendants, as a matter of procedure. It explained its decision as follows:

Although the 2007 amendments to the Pennsylvania Rules of Civil Procedure allow "any party" to join an additional defendant, the comments to this rule illustrate that a *plaintiff is only permitted to join an additional defendant when the plaintiff has had a counterclaim filed against him.* Pa. R.[C].P. 2252. In this case, the Defendants did not file a counterclaim against [McCool], and therefore [McCool] was not permitted to join as additional defendants Prison Health Services and its agents.

Trial Court Opinion at 2 (emphasis added). The trial court correctly analyzed the joinder rules.

Pennsylvania Rule of Civil Procedure No. 2252(a), provides, in pertinent part:

(a) Except as provided by Rule 1706.1 [dealing with cross-claims], any party may join as an additional defendant any person not a party to the action who may be

(1) solely liable on the underlying cause of action *against the joining party,* or

\*　　\*　　\*

(4) liable to or with the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the underlying cause of action *against the joining party* is based.

PA. R.C.P. No. 2252(a) (emphasis added). Historically, joinder of additional defendants was a prerogative reserved to those defendants originally named by the plaintiff. Later, the Rules of Civil Procedure were revised to allow *any party* to add additional defendants. PA. R.C.P. No. 2252(a), cmt. 2007 II(2). However, a

---

4. Our scope of review of the trial court's order is plenary where the trial court dismisses a complaint *sua sponte* for failure to state a

cause of action upon which relief may be granted. *Owens v. Shannon,* 808 A.2d 607, 609 n. 5 (Pa.Cmwlth.2002).

plaintiff's use of joinder is limited to the situation where the plaintiff is the subject of a counterclaim filed by one of the original defendants. The 2007 comments to Rule 2252 state that

> [t]he joinder may be effected by "any party," not simply the defendant or additional defendant as under the present rule. *This revision acknowledges that a plaintiff may join an additional defendant in his or her capacity as defendant on a counterclaim.*

PA. R.C.P. No. 2252, cmt. 2007 II(2) (emphasis added).

Here, no defendant had filed a counterclaim against McCool. Accordingly, joinder under PA. R.C.P. No. 2252 was not available to McCool, who was in the litigation in one capacity: as plaintiff.

■ McCool also argues that the trial court erred in dismissing his complaint before it considered his preliminary objections to the defendants' new matter and his petition to file an amended complaint.[5] This contention has no merit.

Section 6602(e)(2) of the PLRA establishes that the court shall dismiss prison conditions litigation *at any time* if it determines that the litigation fails to state a claim upon which relief may be granted. 42 Pa.C.S. § 6602(e)(2). Accordingly, the trial court did not have to address McCool's preliminary objections or other motions before dismissing his complaint.

■ McCool next challenges the trial court's reliance on the PLRA. He contends that his complaint cannot be characterized as "prison conditions litigation." We disagree.

Section 6601 of the PLRA defines "prison conditions litigation" as

> [a] civil proceeding arising in whole or in part under Federal or State law *with respect to* the conditions of confinement or *the effects of actions by a government party on the life of an individual confined in prison.* The term includes an appeal. The term does not include criminal proceedings or habeas corpus proceedings challenging the fact or duration of confinement in prison.

42 Pa.C.S. § 6601 (emphasis added). The gravamen of McCool's medical malpractice complaint is that the

> defendants failed to formulate and adopt and enforce adequate rules and policies to ensure quality care for [McCool] and failed to oversee all persons who practice medicine within its walls.

Complaint ¶ 8. Because the complaint challenges the quality of medical care at the prison, it squarely fits the definition of prison conditions litigation. *See, e.g., Richardson v. Thomas*, 964 A.2d 61, 65 (Pa.Cmwlth.2009) (holding that a prisoner's prior medical malpractice claim was properly dismissed under the PLRA for failure to timely file a certificate of merit and, therefore, the dismissal constituted a "strike").

■ McCool next argues that the trial court erred in dismissing his complaint because the two affirmative defenses raised by the defendants, sovereign immunity and lack of notice, have no validity.[6]

---

5. The trial court did not explain its decision to deny McCool's application to file an amended complaint, but it properly did so. By filing certificates of merit that precluded expert testimony, McCool failed to state a cause of action. *See infra* notes 7–9 and accompanying text.

6. Defendants concede that the trial court was incorrect in finding that McCool did not provide notice of his claim within six months of its occurrence. Documents filed with the trial court on May 19, 2008, demonstrated that he provided the required notice in a timely fashion.

Section 6602(e) of the PLRA states, in relevant part, that

> the court shall dismiss prison conditions litigation at any time ... if the court determines ... the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

42 Pa.C.S. § 6602(e)(2). Accordingly, the defense of sovereign immunity can provide a basis for dismissal of a prison conditions lawsuit.

■ The Commonwealth is immune from suit in tort, and this immunity extends "to employees of the Commonwealth who are not high public officials ... [when they act] within the scope of their employment and not in an intentionally malicious, wanton or reckless manner." *Walter v. Commonwealth of Pennsylvania*, 23 Pa. Cmwlth. 97, 350 A.2d 440, 442 (1976). The trial court held that because McCool's negligence complaint targeted defendants acting in the scope of their employment, sovereign immunity barred the complaint from going forward. We agree with the trial court's analysis except with respect to one defendant, *i.e.*, Donald Skunda, Director of Prison Health Care Services at SCI–Forest.

The General Assembly has waived sovereign immunity in certain limited circumstances. This waiver has been explained by this Court as follows:

> [a] party may proceed against a Commonwealth agency if it can establish that damages would have been recoverable under common law (or a statute creating a cause of action) had the injury been caused by a defendant not protected by sovereign immunity. 42 Pa.C.S. § 8522(a). Additionally, the alleged negligent act must fall within one of the specifically enumerated exceptions provided by the legislature.

*LaChance v. Michael Baker Corporation*, 869 A.2d 1054, 1057 (Pa.Cmwlth.2005) (internal footnote omitted). Medical malpractice is one of the specifically enumerated exceptions. Accordingly, McCool contends that his amended medical malpractice complaint against the prison's health care services department and its agents, Delie, Sherbine, and Dr. Maxa, should not have been dismissed because sovereign immunity is not a defense to such a complaint.

The exception for medical malpractice claims against the Commonwealth is set forth in Section 8522(b)(2) of the Judicial Code, which states as follows:

> (b) Act which may impose liability.— The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised for damages caused by:
>
> > (2) Medical-professional liability.— Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

42 Pa.C.S. § 8522(b)(2). This exception might apply to the prison's health care services department, Delie, Sherbine and Dr. Maxa. However, McCool did not name them in the original complaint, and his attempt to join them as defendants was invalid under PA. R.C.P. No. 2252(a). Further, the exception has no application to the defendants originally named in McCool's complaint, *i.e.*, the Department, Secretary Beard or Deputy Secretary McVey, because they are not "health care employees of a Commonwealth agency." 42 Pa.C.S. § 8522(b)(2). Accordingly, the complaint against them was properly dismissed.

This leaves one defendant, Skunda. If the allegations about Skunda were found

true, they would fall within the Section 8522(b)(2) exception to sovereign immunity. Indeed, Skunda concedes this point.

■ Nevertheless, McCool's claim against Skunda was properly dismissed for another reason. In *Wareham v. Jeffes*, 129 Pa.Cmwlth. 124, 564 A.2d 1314, 1321 (1989), this Court held that "generally when the complexities of the human body are involved expert testimony is required to aid the jury in reaching conclusions as to the cause of pain or injury." The only time expert testimony will not be required for a medical malpractice claim is where the causal connection between the defendants' allegedly negligent act and the harm suffered by the plaintiff is "generally a matter of common knowledge," rendering the jury "capable through its every day experience and knowledge of comprehending the facts presented and drawing conclusions based on those facts." *Id.* Gener-

ally, such negligence rises to the level of gross incompetence.[7]

In this case, McCool's certificates of merit stated that expert testimony of an appropriate licensed professional was unnecessary to prosecute his claims. He is wrong. McCool's ailments, mastocytosis and esophageal dysphagia, are complex and little known diseases.[8] An ordinary layperson would be incapable of deciding whether Skunda had acted negligently without hearing from experts about McCool's conditions. Accordingly, McCool needed to file a certificate of merit attesting to the fact that a licensed professional had supplied him with a written statement that there exists a reasonable probability that McCool was the victim of medical malpractice. PA. R.C.P. No. 1042.3(a)(1). McCool did not do so, and the certificates of merit he filed are binding.[9] Because McCool could not pursue a claim against

---

7. For example, in *Smith v. Yohe*, 412 Pa. 94, 104–106, 194 A.2d 167, 172–173 (1963), our Supreme Court held that expert testimony was not necessary to establish a *prima facie* case of negligence where a physician failed to take diagnostic x-rays to rule out the possibility of fractures after an elderly patient had fallen, causing paralysis on his right side, extreme pain and obvious displacement. The Court held that the average member of a jury would have sufficient knowledge of the diagnostic value of x-rays to determine whether the physician's failure to take x-rays "evidenced a lack of judgment and care in arriving at a diagnosis." *Id.* at 105, 194 A.2d at 173.

8. Mastocytosis is considered to be an "orphan disease," affecting 200,000 or fewer people in the United States. National Institutes of Health, National Institute of Allergy and Infectious Diseases, *available at* http://www3.niaid.nih.gov/topics/mastocytosis. Esophageal dysphagia is also not a disorder with which ordinary laymen would be familiar. In order for a jury to establish causation, expert medical testimony would be necessary to explain, at the least, the nature of the illnesses, the symptoms, the ease or difficulty of diagnosis, and what actions Skunda should have taken

but failed to take in order to prevent McCool's episode of esophageal stricture.

9. Pennsylvania Rule of Civil Procedure No. 1042.3(a)(3) provides:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, *or*

\* \* \*

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.
*Note:* In the event that the attorney certifies under subdivision (a)(3) that an expert is

Skunda for professional malpractice without expert testimony, his complaint failed to state a claim, even as to Skunda.

We turn next to McCool's contention that the trial court should have allowed him to pay the filing fees and proceed under Section 6602(f) of the PLRA instead of dismissing his complaint under Section 6602(e) of the PLRA.[10] The trial court concluded that if a complaint does not state a cause of action it must be dismissed, regardless of whether the plaintiff is willing to pay the costs of litigation.

■ Normally, the consequences of the "three strikes rule" deprive the prisoner of

the ability to pursue his claim *in forma pauperis*. 42 Pa.C.S. § 6602(f).[11] He could, however, proceed by paying costs. *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth.2008).[12] Here, however, McCool's complaint was dismissed for the reason that it did not state a cause of action. This result would have been required even if McCool had never petitioned to proceed *in forma pauperis* and had paid the filing fees.

For all the above-stated reasons, we affirm the order of the trial court dismissing McCool's complaint.[13]

---

unnecessary for prosecution of the claim, in the absence of exceptional circumstances *the attorney is bound by the certification* and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation.

PA. R.C.P. No. 1042.3(a) (emphasis added).

10. Section 6602(e) states, in relevant part:
Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines any of the following:

\* \* \*

(2) The prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

42 Pa.C.S. § 6602(e)(2).

11. Section 6602(f) states, in relevant part:
If the prisoner has previously filed prison conditions litigation and ... three or more of these prior civil actions have been dismissed pursuant to subsection (e)(2) ... the court may dismiss the action.

42 Pa.C.S. § 6602(f).

12. In *Jae*, this Court stated that
[t]he "three strikes rule" of Section 6602(f) of the PLRA does not prevent prisoners from filing any number of civil actions challenging prison conditions. It only restricts

their ability to pursue such actions *in forma pauperis*. There is a legitimate governmental interest in deterring frivolous law suits, and Section 6602(f) advances that goal rationally by depriving an abusive litigator of the ability to proceed *in forma pauperis*. Further, the legislation balances the need to deter prisoners from filing frivolous litigation against the need to protect prisoners from physical harm.

946 A.2d at 809 (footnote omitted).

13. McCool contends that his complaint should not have been dismissed under the "three strikes rule" because he has no prior "strikes." Section 6602(f)(1) of the PLRA, 42 Pa.C.S. § 6602(f)(1), states that a court may dismiss prison conditions litigation where the prisoner previously has filed prison conditions litigation and three or more of these actions have been dismissed. In 2001, McCool filed three prison conditions claims that were dismissed for failure to state a cause of action. According to the Pennsylvania Department of Corrections' website, these cases were docketed at USDC–MD No. 01–CV–752, USDC–MD No. 01–CV–1100 and USDC–MD No. 01–CV–0519. The trial court also dismissed as frivolous a prison conditions lawsuit brought by McCool in 2008 docketed at CD 40 of 2008. Trial Court's Memorandum Opinion, June 4, 2008, at 2 n. 1; C.R. Item No. 13. The issue of whether the prior claims constituted "strikes" need not be addressed in light of our holding that McCool's complaint did not state a cause of action.

## ORDER

AND NOW, this 29th day of July, 2009, the order of the Court of Common Pleas of the 37th Judicial District (Forest County Branch) dated June 4, 2008, in the above-captioned matter is hereby AFFIRMED.