J-S36016-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ORLANDO BAEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECT CARE SOLUTIONS, INC., | : | |
| DENISE CORAL SMYTH, LORI ANN | : | |
| RIDINGS, NATALIE D. AUSTIN, AND | : | |
| WILLIAM J. NICHOLSON | : | |
| | : | |
| Appellees | : | No. 1854 WDA 2019 |

Appeal from the Order Entered October 23, 2019
In the Court of Common Pleas of Greene County
Civil Division at No(s): 365 AD 2018

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY KING, J.: FILED DECEMBER 11, 2020

Appellant, Orlando Baez, appeals pro se from the order entered in the Greene County Court of Common Pleas, sustaining the preliminary objections of Appellees, Correct Care Solutions, Inc., Denise Coral Smyth, Lori Ann Ridings, Natalie D. Austin, and William J. Nicholson, and dismissing Appellant's amended complaint in this medical malpractice action.[1] We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Generally, the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in civil cases involving our state government or its officers. See 42 Pa.C.S.A. § 762(a)(1). See also Flaxman v. Burnett, 574 A.2d 1061 (Pa.Super. 1990) (explaining Commonwealth Court has exclusive appellate jurisdiction of appeals involving

The relevant facts and procedural history of this appeal are as follows. Appellant was an inmate at SCI-Greene, and he is currently housed at SCI-Phoenix. On June 29, 2018, Appellant filed a pro se complaint against Appellees, who were health care providers at SCI-Greene. Appellant alleged that he filled out sick-call requests ("DC-500 forms") on multiple occasions in March, April, and May 2017, seeking medical treatment from Appellees. Appellant claimed his requests were "related to [Appellant's] [l]upus, its multiple complications, and side effects." (Complaint, filed 6/29/18, at ¶33). Appellant insisted that Appellees did not respond to his requests, their conduct breached a duty of care, and Appellant suffered injuries as a result.

Pursuant to Pa.R.C.P. 1042.3(a), Appellant attached five, separate certificates of merit to his complaint. Each certificate stated, "Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against" Appellees. (Certificates of Merit, filed 6/29/18). Specifically, Appellant asserted "a layperson can easily understand the facts and causation of the injury," and an expert "would not provide requisite information and/or clarity to the elements and/or claims raised."

---

tort claims against either Commonwealth or local agency). Here, the parties on appeal include employees and agents of the Department of Corrections. Nevertheless, we exercise jurisdiction over this case, where Appellees have not objected to this Court's jurisdiction. See Flaxman, supra (declining to transfer cause of action involving transit authority to Commonwealth Court where parties did not raise objection to Superior Court's assumption of jurisdiction as required by Pa.R.A.P. 741(a)).

(Id.)

Appellees Correct Care Solutions, Inc., Smyth, Ridings, and Austin filed preliminary objections, including a claim that Appellant failed to provide proper certificates of merit. On January 25, 2019, the trial court sustained Appellees' preliminary objection pursuant to Rule 1042.3(a), finding "the causes of action, as alleged by [Appellant], are not ones that are within the purview of a layman." (Order and Opinion, filed 1/25/19, at 5). Thus, the court dismissed the complaint without prejudice to Appellant's ability to file an amended complaint with appropriate certificates of merit.[2]

Appellant filed a pro se amended complaint on March 27, 2019. In the amended complaint, Appellant reiterated that Appellees "fail[ed] to respond to [Appellant's] … DC-500" forms, which amounted to a breach of their duty of care. (Amended Complaint, filed 3/27/19, at ¶38). Additionally, Appellant alleged that Appellees "stymied [Appellant's] ability to seek out medical attention and/or in doing so, sought to limit an issue to one medical concern per each DC-500 form, notwithstanding a lack of authority to do so." (Id. at ¶58). Appellant also claimed "on numerous occasions," Appellees "would

_____

[2] Appellee Nicholson filed separate preliminary objections, arguing that Appellant's complaint did "not state in a concise and summary form the material facts upon which the cause of action is based," and did not "inform [Appellee] of the issues that he must meet in answering said allegations." (Preliminary Objections, filed 9/4/18, at ¶3). The court sustained Appellee Nicholson's preliminary objections, allowing Appellant "until April 1, 2019 to file an amended complaint against [Appellee] Nicholson." (Order and Opinion, filed 1/25/19, at 7).

reject and return the issued DC-500 … by placing it in [Appellant's] door, and walking away, and did so under the guise it was improperly filled out." (Id. at ¶59).

Regarding damages, Appellant argued that Appellees' negligence resulted in the "exacerbation of pain and suffering" for various issues related to his lupus, including breathing difficulties and joint pain. (Id. at ¶¶71, 74, 77, 80, and 83). Again, Appellant included certificates of merit, claiming that expert testimony was unnecessary for the prosecution of his claims.

All Appellees, including Appellee Nicholson, filed preliminary objections arguing that Appellant continued to provide improper certificates of merit. The court conducted oral argument on October 1, 2019. On October 23, 2019, the court sustained Appellees' preliminary objections and dismissed Appellant's cause of action.[3]

Appellant timely filed a pro se notice of appeal on November 15, 2019.[4] On December 2, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b)

_____

[3] The court's order expressly stated it was "a final and appealable order." (Order and Opinion, filed 10/23/19, at 6).

[4] The notice of appeal included a certificate of service, indicating that Appellant submitted his legal paperwork to prison authorities for mailing on November 15, 2019. Accordingly, we consider the notice of appeal to be timely filed. See Thomas v. Elash, 781 A.2d 170 (Pa.Super. 2001) (explaining that under "prisoner mailbox rule," pro se prisoner's appeal is deemed filed on date he delivers it to prison authorities and/or places notice of appeal in institutional mailbox; prisoner mailbox rule applies to all pro se legal filings by incarcerated individuals, including civil litigants).

concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on December 16, 2019.

Appellant raises four issues for our review:

> Whether the court abused its discretion or committed an error of law when it misapplied the requisites in the filing of a certificate of merit pursuant to [Pa.R.C.P.] 1042.3(a)(3)[.]
>
> Whether the court abused its discretion or committed an error of law when it concluded that Appellant was required to file a certificate of merit pursuant to [Pa.R.C.P.] 1042.3(a)(1 or 2), when no medical treatment was ever provided during the times in question so as to require an expert to opine on whether [the] course of treatment (or lack thereof) deviated from an expected standard of practice[.]
>
> Whether the court abused its discretion or committed an error of law when it concluded Appellant was required to file a certificate of merit pursuant to [Pa.R.C.P.] 1042.3(a)(1 or 2), in a simple negligence lawsuit pursuant to 42 Pa.C.S.A. § 8522(b)(2), against agents of the Department of Corrections where Appellant alleged a breach of duty in their failing to respond to requests for medical treatment when a duty so existed, despite what type of complaints Appellant was seeking medical treatment for[.]
>
> Whether the court abused its discretion or committed an error of law when it concluded Appellant's certificate of merit pursuant to [Pa.R.C.P.] 1042.3(a)(1 or 2), in a simple negligence lawsuit pursuant to 42 Pa.C.S.A. § 8522(b)(2), against agents of the Department of Corrections was inadequate despite a layman's ability to understand the causation between the breach of duty and the injury; that being, Appellees' failure to respond resulted in pain and suffering.

(Appellant's Brief at 5).

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections are as follows:

- 5 -

> Our review of a trial court's sustaining of preliminary objections in the nature of a demurrer is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.
>
> All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for [the purpose of this review]. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Lerner v. Lerner, 954 A.2d 1229, 1234 (Pa.Super. 2008) (emphasis in original) (internal citations omitted). "To the extent that the question presented involves interpretation of rules of civil procedure, our standard of review is de novo." Gray v. PennyMac Corp., 202 A.3d 712, 715 (Pa.Super. 2019).

Appellant's arguments are related, and we address them together. Appellant insists that expert testimony is not required "if the issues presented to a jury are such that a layperson can understand the nexus between the breach of duty and the injury." (Appellant's Brief at 12). As such, Appellant argues the allegations in his amended complaint do not require expert testimony. Appellant emphasizes his claims are limited to Appellees' "failure and/or refusal to even respond to a request for medical treatment as obligated

... by well-established federal law."[5] (Id. at 14). Appellant reiterates he is not challenging Appellees' medical judgments, and an expert's testimony should not be required to demonstrate that Appellees breached a duty by failing to respond to Appellant's DC-500 forms. Appellant concludes the trial court erred in sustaining Appellees' preliminary objections, and this Court must reverse the order at issue and remand the case for further proceedings. We disagree.

A "medical professional liability action" is defined in the Medical Care Availability and Reduction of Error ("MCARE") Act as "[a]ny proceeding in

_____

[5] Appellant relies on Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), for the proposition that "federal law" created Appellees' duty of care in the instant case. We observe that Estelle specifically held that the government has an obligation to provide medical care for incarcerated individuals, and the failure to treat a prisoner's medical needs amounts to the infliction of unnecessary suffering that violates the Eight Amendment of the United States Constitution. Id. at 104-05, 97 S.Ct. at 290-91, 50 L.Ed.2d at ____. Nevertheless, Estelle also noted:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 106-07, 97 S.Ct. at 292, 50 L.Ed.2d at ____ (internal quotation marks omitted).

- 7 -

which a medical professional liability claim is asserted, including an action in a court of law or an arbitration proceeding." 40 P.S. § 1303.103. Moreover, a "medical professional liability claim" is "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." Id. (emphasis added).

Rule 1042.3 requires complaints sounding in medical professional liability to include certificates of merit:

> Rule 1042.3. Certificate of Merit
>
> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.
>
> *    *    *

(e)     If a certificate of merit is not signed by an attorney, the party signing the certificate of merit shall, in addition to the other requirements of this rule, attach to the certificate of merit the written statement from an appropriate licensed professional as required by subdivisions (a)(1) and (2).  If the written statement is not attached to the certificate of merit, a defendant seeking to enter a judgment of non pros shall file a written notice of intent to enter a judgment of non pros for failure to file a written statement under Rule 1042.11.

Pa.R.C.P. 1042.3(a), (e) (internal notes omitted).

Further, "claims of medical malpractice necessarily raise questions involving medical judgment."  Grossman v. Barke, 868 A.2d 561, 570 (Pa.Super. 2005), appeal denied, 585 Pa. 697, 889 A.2d 89 (2005).

One of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons.  In other words, [b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury.

The expert testimony requirement in a medical malpractice action means that a plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care and that the breach proximately caused the plaintiff's injury.  Hence, causation is also a matter generally requiring expert testimony.

Id. at 566-67 (internal citations and quotation marks omitted) (emphasis added).

"The only time expert testimony will not be required for a medical

malpractice claim is where the causal connection between the defendants' allegedly negligent act and the harm suffered by the plaintiff is generally a matter of common knowledge, rendering the jury capable … of comprehending the facts presented and drawing conclusions based on those facts." McCool V. Department of Corrections, 984 A.2d 565, 571 (Pa.Cmwlth. 2009), appeal denied, 605 Pa. 677, 989 A.2d 10 (2010) (internal citation and quotation marks omitted).[6] "Generally, such negligence rises to the level of gross incompetence." Id.

Instantly, the trial court acknowledged Appellant's argument that expert testimony should not be necessary to establish the relevant standard of care in a case where prison health care providers ignored an inmate's requests for treatment. (See Order and Opinion, filed 10/23/19, at 3). Nevertheless, the court determined other aspects of Appellant's claims involved matters not within the ordinary knowledge and experience of laypersons:

> In this instance, [Appellant] sought treatment for issues directly related to his [l]upus, its multiple complications and side effects, those of which included but were not limited to the lupus condition, two fractured ribs, serious chronic breathing, rheumatoid arthritis, joint complications, chronic pain, and exacerbation of that pain. See [Appellant's] Complaint, paragraphs 22, 71, 74, 77, 80 and 83. Clearly, [Appellant's] conditions and exacerbation of same are well beyond the province of laypersons to decide.

_____

[6] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." Petow v. Warehime, 996 A.2d 1083, 1089 n.1 (Pa.Super. 2010), appeal denied, 608 Pa. 648, 12 A.3d 371 (2010).

(Id. at 5). Based upon the averments in the amended complaint, we agree that Appellant's claims necessarily implicate matters not within the ordinary knowledge and experience of laypersons. See Grossman, supra.

Specifically, the amended complaint admits that Appellant was aware of the complications and side effects of his lupus diagnosis, including breathing problems and joint pain. (See Amended Complaint at ¶33). Appellant maintains there was an "exacerbation of pain of suffering" for these chronic ailments due to Appellees' inaction. (Id. at ¶¶71, 74, 77, 80, and 83). Absent any expert testimony, however, the jury would be left to speculate about the link between Appellees' conduct, causation, and the exact nature of any "exacerbation." See Grossman, supra; Pa.R.C.P. 1042.3(a)(1). Further, on this record, we cannot conclude that the causal connection between Appellees' allegedly negligent act and the harm suffered by Appellant is generally a matter of common knowledge. See McCool, supra. Compare Smith v. Yohe, 412 Pa. 94, 194 A.2d 167 (1963) (holding expert testimony was not necessary to establish prima facie case of negligence where physician failed to take x-rays to rule out possibility of fractures after elderly patient had fallen; average juror would have sufficient knowledge of diagnostic value of x-rays to determine whether physician's omission evidenced lack of judgment and care).

Moreover, Appellant alone cannot simply aver that his claims are understandable to a layperson. Appellant's certificates of merit were not

signed by an attorney. As such, the certificates of merit needed to include written statements from an appropriate licensed professional; the Rule does not allow a pro se party to certify that expert testimony is unnecessary. See Pa.R.C.P. 1042.3(e).

Additionally, we disagree with Appellant's attempt to simplify the claims in the amended complaint by characterizing them as straightforward arguments about Appellees' failure to respond to DC-500 forms. Although the amended complaint included an allegation that Appellees failed to respond, it also contained a distinct assertion regarding Appellees' attempts to limit medical consultations to one issue per DC-500 form. (See Amended Complaint at ¶58). Likewise, Appellant also cited instances where Appellees rejected his DC-500 forms as incorrectly filled out. (Id. at ¶¶ 59). Contrary to Appellant's argument, the amended complaint reveals Appellees provided some response to his DC-500 forms, albeit a response that left Appellant unsatisfied.

Based upon the foregoing, the court properly determined that Appellant failed to supply adequate certificates of merit, pursuant to Pa.R.C.P. 1042.3(a). Thus, the court did not commit an abuse of discretion in sustaining Appellees' preliminary objections. See Lerner, supra. Accordingly, we affirm.

Order affirmed.

Judge Olson concurs in the result.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/11/2020