IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clifton Willams,                          :
                        Appellant         :
                                          :
            v.                            :
                                          :    No. 166 C.D. 2024
Tim Holmes and George Beaver             :    Submitted: April 8, 2025

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                              FILED: June 18, 2025


            Clifton Williams (Williams) appeals, *pro se*, from the January 29, 2024
order of the Court of Common Pleas of Schuylkill County (Trial Court) that
sustained two preliminary objections (Preliminary Objections) to Williams's
complaint (Complaint) filed on behalf of Timothy Holmes and George Beaver
(collectively, Appellees), one in the nature of a demurrer and one based on sovereign
immunity.[1]  Upon review, we affirm.

## I.  Background and Procedural Posture

            The facts underlying this matter are not in dispute.  Previously, in 2008,
Williams brought a civil rights action in federal court alleging that he had been
wrongfully terminated from his prison employment in the kitchen of the State

---

[1] Appellees filed a third preliminary objection based on an allegation that Williams failed
to serve Appellee Beaver with the Complaint, which preliminary objection the Trial Court
determined was moot given its determination of the other two preliminary objections.  *See* Order
of Court dated January 29, 2024 (Trial Court Order) at 2, Original Record (O.R.) Item No. 35.  No
party appealed the Trial Court's determination in reference to this third preliminary objection.

Correctional Institution in Mahanoy, Pennsylvania (SCI-Mahanoy), and had received an improper misconduct after not stopping his observance of prayers during his work shift in the prison kitchen upon the direction of SCI-Mahanoy personnel. *See* Trial Court Opinion Pursuant to Pa.R.A.P. 1925 filed March 5, 2024 (Trial Court Opinion) at 1-2. The federal court found in Williams's favor and directed that the misconduct be stricken from Williams's prison record and, further, that he be reinstated to his kitchen job or to an alternative job at the rate of pay he would have received had he not received the misconduct and been fired from the position in the SCI-Mahanoy kitchen.[2] *See* Trial Court Opinion at 1-2. After being informed that

---

[2] The federal court ordered as follows:

> 1. Inasmuch as [Williams'] statutory rights under [the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc–1,] were violated by Defendants, Defendants will immediately remove the official misconduct violation from [Williams's] prison record arising from his saying prayer in the kitchen area on October 23, 2006.
>
> 2. Within thirty (30) days of the date of this Order, SCI-Mahanoy shall provide a clean and appropriate space for Muslim inmates working in the kitchen to offer prayer in a prone position during their shift all year round. Alternatively, if such a space cannot be created in the kitchen for year-round prayer, Muslim inmates shall be permitted to offer prone prayer in the dining room while on kitchen duty.
>
> 3. [Williams] shall either be reinstated to his position in the kitchen at SCI-Maloney [sic] or, in the alternative, to another suitable job position within SCI-Mahanoy at the rate he would have been paid had he not been cited for the October 23, 2006 misconduct and subsequent loss of job.
>
> 4. [Williams'] counsel may submit an appropriate petition for attorneys' fees within thirty (30) days of this Order.

the misconduct was removed from his prison record, Williams submitted a request to Appellee Beaver seeking $2,842.14 in lost wages from October 23, 2006, through September 1, 2012, the period during which he was unemployed as a result of the misconduct, and for back pay. *See* Trial Court Opinion at 2. Appellee Beaver denied Williams's request, explaining that the federal court's order did not include any provisions awarding lost wages and/or back pay. *See* Trial Court Opinion at 2. Williams then filed an inmate grievance, which the Department of Corrections (DOC) Office of Chief Legal Counsel reviewed and denied, again because the federal court order had not ordered the payment of lost/back wages. *See* Trial Court Opinion at 2. Further, to the extent Williams's grievance raised new and separate claims for back wages, the DOC's grievance coordinator denied such claim, determining that Williams was not entitled to back pay because he was then earning more than he would have been making in the kitchen job. *See* Trial Court Opinion at 2.

In May of 2018, Williams filed the Complaint[3] alleging that, in 2006, he was wrongfully terminated from his prison kitchen job at SCI-Mahanoy after he did not comply with a prison staff member's directive to cease prayer. *See* Trial Court Opinion at 1. On April 15, 2021, Williams filed a Praecipe for Entry of Judgment of Default and Assessment of Damages, and the Trial Court's

---

5. The Clerk of Courts is directed to CLOSE the file on this case.

Order of the United States District Court for the Middle District of Pennsylvania dated May 18, 2016, at Docket No. 4:08-cv-1915, Reproduced Record at Exhibit A.

[3] Williams originally filed the Complaint in this Court at Docket No. 387 M.D. 2018. This Court transferred the matter to the Trial Court by Order dated May 31, 2018. *See* Order dated May 31, 2018, Commonwealth Court Docket No. 387 M.D. 2018.

prothonotary entered judgment in Williams's favor that same day. On April 23, 2021, Appellees filed "Defendants' Motion to Strike Default Judgments" (Motion to Strike), alleging that the Complaint had not been served on Appellees, to which Williams filed a response. *See* Motion to Strike, Original Record (O.R.) Item No. 9. On May 13, 2021, the Trial Court granted the Motion to Strike because the record was devoid of any proof that Appellees were served with the Complaint and the Trial Court accordingly lacked jurisdiction over the claims of the Complaint. *See* Trial Court Order, May 13, 2021, at n.1. Williams appealed to the Superior Court, which transferred the matter to this Court. This Court, in turn, quashed the appeal as interlocutory by Order dated January 3, 2022. *See* Order, January 3, 2022, Commonwealth Court Docket No. 1031 C.D. 2021.

Thereafter, on May 3, 2023, the Trial Court issued an order to show cause why the matter should not be dismissed for failure to prosecute. By orders entered September 28, 2023, and October 26, 2023, the Trial Court directed Appellant to reinstate the Complaint and properly serve it upon Appellees. *See* Trial Court Opinion at 2. Williams properly reinstated the Complaint on November 13, 2023, and served Appellee Holmes on November 27, 2023. *See* Trial Court Opinion at 2. Appellees filed the instant Preliminary Objections on December 11, 2023, to which Williams filed a response. *See* Trial Court Opinion at 2-3. On January 29, 2024, the Trial Court entered an order sustaining the Preliminary Objections, in part,[4] and dismissing the Complaint with prejudice. *See* Trial Court Opinion at 3; *see also* Order of Court dated January 29, 2024 (Trial Court Order) at 2, O.R. Item No. 35. Williams timely appealed to this Court. *See* Trial Court Opinion at 3.

---

[4] *See supra* note 1.

4

## II.  Issues

On appeal,[5] Williams argues that the Trial Court erred by sustaining the Preliminary Objections.[6]  *See* Williams's Br. at 2, 22-36.  First, Williams claims the Trial Court abused its discretion by granting the Motion to Strike.  *See* Williams's Br. at 2, 22-30.  Next, Williams argues that the Trial Court committed an error of law by determining that the claims of the Complaint are barred by sovereign immunity.  *See* Williams's Br. at 2, 30-36.  Williams is not entitled to relief.

## III.  Discussion

### A.  *Grant of Motion to Strike*

Williams first challenges the Trial Court's grant of Appellees' Motion to Strike.  In this claim, Williams effectively argues that the record of this case illustrates that Appellees knew that they were being sued by Williams and yet did not inform the Trial Court or Williams that they had not been served with the Complaint.  *See* Williams's Br. at 22-30.  Williams argues that Appellees thus led

---

[5] Where a trial court dismisses a complaint as a result of preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Brown v. Wetzel*, 179 A.3d 1161, 1164 n.2 (Pa. Cmwlth. 2018).

[6] Williams states his questions on appeal thusly:

> (1) Whether the [T]rial [C]ourt abused its discretion by striking [Williams's] default judgment contrary to the facts and law presented to preclude [A]pellees' defense against the default judgment?

> (2) Whether the [T]rial [C]ourt committed an error in [sic] law by determining that [Appellees] were shielded by sovereign immunity?

Williams's Br. at 2.

him to believe that they were not contesting the Complaint and should accordingly be estopped from challenging the default judgment. *See* Williams's Br. at 22-30.

Initially, we observe that "[t]o obtain relief from the entry of a default judgment, the law provides two distinct remedies. An aggrieved party may file a petition to strike a default judgment and/or a petition to open a default judgment, but the remedies are not interchangeable." *Reaves v. Knauer*, 979 A.2d 404, 409 (Pa. Cmwlth. 2009) (citing *Cintas Corp. v. Lee's Cleaning Serv., Inc.*, 700 A.2d 915 (Pa. 1997)). As this Court has explained,

> [a] petition to strike operates as a demurrer to the record and does not involve the discretion of the court. As such, the court may only look to the facts of record at the time the judgment was entered to decide if the record supports the judgment. A petition to strike can only be granted if a fatal defect appears on the face of the record.
>
> In contrast, a petition to open judgment is an appeal to the court's equitable powers. It is committed to the sound discretion of the court and will not be disturbed absent a manifest abuse of discretion. To be successful, a petition to open a judgment must meet the following test: the petition must be promptly filed; the failure to appear or file a timely answer must be excused; and[] the party seeking relief must show a meritorious defense. A party seeking to challenge the factual averments in the record at the time the judgment was entered should file a petition to open the judgment.

*Reaves*, 979 A.2d at 409 (internal citations omitted).

Further, as our Supreme Court has explained:

> Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed.

6

> Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against him or her. Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action against him or her.

*Cintas Corp.*, 700 A.2d at 917-18 (internal citations omitted); *see also Ferraro v. Patterson-Erie Corp.*, 313 A.3d 987, 999 (Pa. 2024) ("Validity of service is essential, and failure to perfect service is fatal to a lawsuit."). Here, Appellees filed the Motion to Strike within 10 days of the judgment being entered. The Motion to Strike and the memorandum of law in support both argued that Williams had not served a copy of the Complaint on Appellees at that time and default judgment was accordingly premature. *See* Motion to Strike; Memorandum of Law In Support of Defendants' Motion to Strike Default Judgments, O.R. Item No. 9. Upon reviewing the Motion to Strike and Williams's response thereto, the Trial Court granted the Motion to Strike, noting:

> Based upon our review of the record of what was of record as of April 15, 2021, we find that the record is devoid of any proof that [Appellees] were served with original process by the sheriff in conformance with Pa.R.C[iv].P. 400. As there is no proof that proper service occurred, it is unclear whether this Court has personal jurisdiction over [Appellees], which is a fatal defect appearing on the face of the record. Therefore, the prothonotary was without the authority to enter default judgment against he [Appellees] on April 15, 2021. Additionally, we find that the record makes clear that [Williams] is suing [Appellees] in their capacity as employees of the [DOC], which is a Commonwealth agency. As such, [Williams] was also required to serve [the C]omplaint upon the Attorney General in accordance with 42 Pa.C.S. [§] 8523(b) and Pa.R.C[iv].P. 422(a). However, the record is also devoid of any proof that the Attorney General was served, which

7

> is another fatal defect that appears on the face of the record. As such, [Appellees'] Motion to Strike [] must be granted.

Trial Court Order dated May 13, 2021, O.R. Item No. 12; *see also* Opinion Pursuant to Pa.R.A.P. 1925 filed August 6, 2021, at 6-8, O.R. Item No. 18.

We find no error with the Trial Court's grant of the Motion to Strike. The Trial Court properly treated the Motion to Strike as a petition to strike a default judgment to be decided on the record.[7] The record here was devoid of proof of proper service of process. Without service of process, the Trial Court lacked jurisdiction over Appellees regarding the Complaint and, therefore, lacked the authority to enter a default judgment against Appellees. Even if true, Appellees' knowledge of the existence of the Complaint did not excuse Williams's obligation to properly serve process. *Cintas*; *Ferraro*. Because the record was devoid of evidence of proper service of Appellees by Williams, the Trial Court neither abused its discretion nor committed an error of law by granting the Motion to Strike. Accordingly, Williams is entitled to no relief as to his first issue.

**B.** *Sovereign Immunity*

In his second issue, Williams argues that the Trial Court erred by determining that sovereign immunity applies to this matter. *See* Williams's Br. at 30-36. Williams claims that the Complaint is excepted from the defense of sovereign immunity on the basis of the personal property exception. *See* Williams's Br. at 30-36. Williams is not entitled to relief on this claim.

---

[7] We observe that Williams's argument that the Trial Court's grant of the Motion to Strike represented an abuse of discretion would have been an appropriate argument for review had the Motion to Strike been a petition to open a default judgment and not a petition to strike default judgment. *See Reaves*, 979 A.2d at 409.

8

Section 2310 of the Pennsylvania Consolidated Statutes, 1 Pa.C.S. § 2310, provides:

> Pursuant to section 11 of [a]rticle [I] of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 . . . .

1 Pa.C.S. § 2310. Thus, under the doctrine of sovereign immunity, "[t]he Commonwealth is immune from suit in tort, and this immunity extends to employees of the Commonwealth who are not high public officials . . . when they act within the scope of their employment and not in an intentionally malicious, wanton or reckless manner." *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (quoting *Walter v. Commonwealth*, 350 A.2d 440, 442 (Pa. Cmwlth. 1976)) (internal brackets and quotation marks omitted). Further, an action for intentional conduct is barred by sovereign immunity where a Commonwealth actor acted within the scope of his employment. *See La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992). An employee's conduct is within the scope of employment where it is of a kind the employee is generally engaged to perform, occurs within the time and space applicable to the employee's duties, and has, at least in part, a purpose to serve the employer's interest. *Kull v. Guisse*, 81 A.3d 148, 153 (Pa. Cmwlth. 2013) (quoting the Restatement (Second) of Agency § 228 (Am. Law Inst. 1958)); *see also*

*Robertson v. Zaken* (Pa. Cmwlth., No. 1111 C.D. 2019, filed Dec. 22, 2021),[8] slip op. at 9 (explaining that "[t]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized, occurring substantially within the authorized time, and done to serve the employer").

Sovereign immunity may be waived, however. As this Court has explained:

> [a] party may proceed against a Commonwealth agency if it can establish that damages would have been recoverable under common law (or a statute creating a cause of action) had the injury been caused by a defendant not protected by sovereign immunity. 42 Pa.C.S. § 8522(a). Additionally, the alleged negligent act must fall within one of the specifically enumerated exceptions provided by the legislature.

*McCool*, 984 A.2d at 570 (quoting *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1057 (Pa. Cmwlth. 2005)). Regarding the enumerated exceptions, the General Assembly has waived sovereign immunity for Commonwealth parties for claims involving: (1) vehicle liability; (2) medical-professional liability; (3) *care, custody or control of personal property*; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 Pa.C.S. § 8522(b) (emphasis added).

---

[8] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

Williams argues that the third enumerated exception to sovereign immunity relating to the care, custody, or control of personal property applies in this matter. He is incorrect.

Section 8533(b)(3) of the Judicial Code provides an exception to waive sovereign immunity in cases involving "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency[.]" 42 Pa.C.S. § 8522(b)(3). The application of this personal property exception to waive sovereign immunity requires "***negligence*** in the care, custody[,] or control" of the property in question. *Nicholson v. M & S Detective Agency, Inc.*, 503 A.2d 1106, 1108 (Pa. Cmwlth. 1986) (emphasis added); *see also Williams v. Stickman*, 917 A.2d 915, 918 (Pa. Cmwlth. 2007) (sovereign immunity excepted under the personal property exception for damage to a prisoner's personal television while in the possession of prison officials during the period of time the prisoner spent in the prison's restricted housing unit).

Here, the personal property exception does not apply because, notwithstanding Williams's attempt to characterize the Appellees' actions as negligent, the facts as pleaded actually allege intentional actions taken within the scope of the Appellees' employment. The Trial Court explained its reasoning on these points as follows:

> In [the] Complaint, [Williams] asserts pursuant to the DOC's Administrative Directive at DC-ADM[ ]816, the Employment Office and/or [Appellee] Beaver "is responsible for resolving payroll conflicts and processing the inmate payroll," and that [Appellee] Beaver was negligent in his responsibility to properly resolve [Williams's] payroll conflict. [Williams] further argues that [Appellee] Holmes was negligent in advising prison

11

officials that [Williams] was not due any lost wages or back pay and/or in his responsibility to give correct legal advice to [Appellee] Beaver and the SCI-Mahanoy officials regarding [Williams's] payroll matter. Based upon a review of the Complaint, and the documents attached thereto, and in admitting every well-pleaded fact in the [C]omplaint and all inferences reasonably deducible therefrom, we determined that [Williams's] factual summation in the Complaint pleads intentional acts by the Appellees, rather than negligent acts. As such, an analysis under the 42 Pa.C.S. [§] 8522(b)(3) exception to sovereign immunity is not required.

In his Response to the Appellees' [P]reliminary [O]bjections, [Williams] further argues that if the [A]ppellees' acts were intentional, they fell outside the scope of a state employee's duty because they were discriminatory towards [Williams] and based on bias and prejudice. However, [Williams] does not allege facts in the Complaint indicating that [Appellee] Holmes'[s] legal advice or [Appellee] Beaver's denial of lost wages and/or back pay was discriminatory or retaliatory in nature. The Complaint simply alleges that the DOC's policy against prayer was discriminatory and that [Williams] was retaliated against because he was unable to gain employment following his challenge to the DOC's policy and/or [Williams's] misconduct violation; however, these issues were already addressed in [Williams's] federal litigation.

Next, we determined, as a matter of law, that the complained of acts by Appellees, i.e., giving legal advice to SCI-Mahanoy officials and/or by denying [Williams's] request for lost wages and back pay, were within the scope of [Appellee] Beaver's and [Appellee] Holmes'[s] employment duties because, based upon a review of the Complaint and its attachments, these acts appear to have occurred during Appellees' hours of employment with the DOC; the complained of conduct is of the same general nature authorized, or incidental to the conduct authorized,

12

because [Appellee] Beaver was responsible for "resolving payroll conflicts and processing the inmate payroll" and [Appellee] Holmes was an attorney in the DOC's Office of Chief [Legal] Counsel; and the acts were done to serve Appellees' employer, i.e.[, Appellee] Beaver's denial was in response to [Williams's] June 15, 2017 request for lost wages and/or back pay, and said denial informed [Williams] of the reasoning of the denial and indicated that [Williams's] request was reviewed with the DOC's Chief [Legal] Counsel's Office. Therefore, we found that the instant matter was barred by sovereign immunity because the complained of conduct was intentional in nature, and as a matter of law, said conduct was within the scope of Appellees' employment. As such, we granted Appellees' [P]reliminary [O]bjection related to sovereign immunity and dismissed the Complaint with prejudice.

Trial Court Opinion at 6-8 (footnote omitted).

We find no error with the Trial Court's reasoning. The determinations made and advice rendered in relation to Williams's request for back pay represent actions within the scope of their employment. The advice given and the decisions about distributions and withholdings were within the purview and responsibilities of their employment. Accordingly, because Appellees' actions were intentional and within the scope of their employment, we find that the Trial Court neither abused its discretion nor committed an error of law by determining that the personal property exception to sovereign immunity does not apply to the instant matter. *McCool*; *La Frankie*.

Moreover, even if we accepted Williams's characterization of the Appellees' conduct as asserting negligence, the personal property exception to sovereign immunity still would not apply here. "For the personal property waiver to apply, the personal property itself must be in some manner responsible for the

13

injury." *Nicholson*, 503 A.2d at 1108 (finding personal property exception to sovereign immunity inapplicable where criminal records in the possession of the Commonwealth not involved in the chain of injury causation, only the Commonwealth's negligent search therefor); *see also Walters v. Dep't of Transp.*, 474 A.2d 66, 67 (Pa. Cmwlth. 1984) (finding inapplicable the personal property exception to sovereign immunity where "the chattels themselves were in no way involved in the chain of causation" of the alleged injury). Further, this Court has declined to find that claims of purported financial harms fall within the personal property sovereign immunity exception. *See Sugalski v. Commonwealth*, 569 A.2d 1017, 1019 (Pa. Cmwlth. 1990) (declining to find personal property exception waiver of sovereign immunity based on Pennsylvania State Police's failure to place seized money in an interest-bearing account); *see also Urella v. Pennsylvania State Troopers Ass'n*, 628 F. Supp. 2d 600, 606 (E.D. Pa. 2008) (declining to find waiver of sovereign immunity under personal property exception for alleged financial damages occasioned by Commonwealth's withholding of pension and medical benefits).

The instant matter is not a case involving damage to Williams's personal property or in which the property in question was somehow in the chain of causation of the alleged injury. The Complaint alleges that Appellee Beaver is responsible for payroll conflicts and processing inmate payroll, and that Beaver was negligent in conducting these responsibilities by not properly resolving Williams's request for back pay, which Williams alleges was a payroll issue. *See* Complaint at 5-9. The Complaint further alleges that Appellee Holmes was duty-bound to provide prison officials with correct legal advice and that he negligently advised prison officials that the requested back pay was not due to Williams. *See* Complaint at 5-

9. Despite Williams's suggestions to the contrary, the Complaint does not pertain to any actual, tangible personal property in the care, custody, or control of Appellees. The Complaint does not concern monies actually in Williams's bank or prison account. Therefore, the Complaint pertains to a request for damages as a result of the federal court's ruling that he should be reinstated to his job. These alleged damages are not personal property in the possession of Appellees and within the chain of causation of Williams's alleged injury. *See Nicholson*, *Walters*. Williams's claimed injury is a financial one purportedly caused by Appellees' conduct. Such alleged financial injuries caused by the conduct of government personnel do not waive sovereign immunity under the personal property exception. *See Sugalski*; *Urella*. For these reasons, the personal property exception to sovereign immunity does not apply to the allegations of the Complaint.

Accordingly, Williams is not entitled to relief on his second issue on appeal.

### IV. Conclusion

For the above reasons, we affirm the Trial Court Order.


_____
CHRISTINE FIZZANO CANNON, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clifton Willams, : 
                  Appellant : 
                         : 
       v. : 
                         :   No. 166 C.D. 2024
Tim Holmes and George Beaver : 

# **O R D E R**

AND NOW, this 18th day of June, 2025, the January 29, 2024 order of the Court of Common Pleas of Schuylkill County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge